UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────────

MARIA LEHMAN,

            Plaintiff,

v.                                           **DECISION AND ORDER**
                                                  13-CV-482S

BERGMANN ASSOCIATES, INC.,

            Defendant.
─────────────────────────────────

## I. INTRODUCTION

Maria Lehman alleges that her former employer, Bergmann Associates Inc., violated Title VII of the Civil Rights Act of 1964 by creating a hostile work environment and by retaliating against her for filing charges of discrimination. She also alleges that Bergmann violated the federal Equal Pay Act and New York's Equal Pay Act by paying her a wage lower than that of comparable men.

Bergmann now seeks dismissal of each claim under Rule 12(b)(6). For the following reasons, Bergmann's motion is granted in part and denied in part.

## II. BACKGROUND

**A.    Facts**[1]

Maria Lehman began working for Bergmann Associates in September of 2007. According to her complaint, Lehman ascended to become the first woman to hold a senior management position at the engineering and architectural firm. (Compl. ¶ 11.[2]) She alleges, however, that it remained a male-dominated enviroment where she encountered

---

[1] Facts alleged in the complaint – but not labels or legal conclusions – must be accepted as true for the purposes of resolving this motion. See Ashcroft v. Iqbal, 556 U.S. 662, 668, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

[2] All citations to paragraph numbers reference the complaint.

sex-based discrimination. For instance, she claims that Shannon Short, the former marketing director, told her that CEO Tom Mitchell referred to Short in front of other supervisors as the "marketing bitch." Short later reported that Mitchell told her that she would never advance in the company because she is a woman. (¶ 15.)[3] Another male manager, Steve Boisvert, reportedly asked if Short was "a bitch like this at home, or just at work." (¶ 15.)

Also, Lehman had access to Bergmann's personnel data, which revealed that Bergmann hired more males, fired more females, and paid males more than females. (¶ 13.)

As for actions allegedly taken against Lehman herself, she maintains that despite Tom Mitchell's awareness that one of Bergmann's employees was charged with sex offenses, Mitchell directed Lehman to travel with this employee without warning her about the pending charges. When Lehman complained, Mitchell shrugged it off, saying it was "too bad." (¶ 25.)

Other incidents, she asserts, contributed to a hostile work environment. Male managers harassed her for complaining of migraines (¶ 29), and Mitchell, who typically did not involve himself in such matters, decided to interview a male job applicant despite Lehman's decision to refuse him an interview because she believed he was "sexist" (¶ 31). Mitchell also complains that "[w]hen male Managers and Directors took the initiative of

---

[3] "[B]ecause the Court must accept as true all factual statements alleged in the complaint for the purposes of a motion to dismiss, 'whether the statements might constitute inadmissible hearsay when relied upon for the truth of the matters asserted is simply irrelevant.'" In re Palermo, No. 08 CV 7421 RPP, 2011 WL 446209, at *5 (S.D.N.Y. Feb. 7, 2011) (quoting DLJ Mortg. Capital, Inc. v. Kontogiannis, 726 F. Supp. 2d 225, 235 (E.D.N.Y. 2010)) (modifications omitted).

setting agendas for and facilitating meetings, CEO Mitchell reacted well. [But] [w]hen Ms. Lehman did the same . . .CEO Mitchell expressed anger with her." (¶ 28.)

Apparently due to grievances like these and possibly others, on October 14, 2011 Lehman "reported to CEO Mitchell . . . that she was the only Manager or Director being reprimanded for problems all of the Managers and Directors were having." (¶ 34.) Lehman goes on to assert that "[a]ll of the other Managers and Directors were male." (¶ 34.) Lehman contends that Mitchell retaliated against her for making this complaint. "Less than two weeks later," Lehman asserts, "CEO Mitchell disciplined [her] by putting her on an unwarranted Performance Improvement Plan." (¶ 34.) She was the first "upper level supervisor" to be placed on such a plan, which Lehman characterizes as "disciplin[ary]." ¶ 35.) Within the plan, sometimes referred to by the acronym "PIP," Mitchell "falsely accused Ms. Lehman of not performing certain managerial roles with sufficient attention to detail."(¶ 38.) But "Ms. Lehman responded by showing Defendant her actual numbers for the task, which showed that she had been extremely accurate." (¶ 38.)

Then, on November 9, 2011, Lehman "gave . . . Mitchell a written complaint of discrimination and hostile work environment based on sex/gender." (¶ 40.) In response, Mitchell "began excluding Ms. Lehman from corporate discussions" (¶ 42) and announced that, contrary to previous representations, Lehman would no longer be considered for the available CEO position (¶ 43).

Other actions allegedly followed: Lehman asserts that Mitchell attempted to "collapse" her department (¶ 45); a December 2011 bonus was the smallest she had ever received as a manager – less than what her male counterparts received (¶¶ 47–48); and she was forced to take a "demotion to Director of Government Relations, which was a less

substantive and less prestigious position than the one [she] had held for the previous 4.5 years." (¶ 50.)

Reasoning that her reputation in the company was now irreparably damaged, Lehman submitted a "letter of resignation/constructive discharge" on March 19, 2012. (¶ 54.) Her last day was April 2, 2012. (¶ 55.)

## B.     Procedural history

On April 13, 2012, Plaintiff filed a charge of discrimination with the New York Division of Human Rights and the Equal Employment Opportunity Commission. That charge did not result in a finding in her favor, and she received her "right-to-sue" letter on February 8, 2013.[4]

Lehman then filed her complaint on May 8, 2013. Three months later, after the parties stipulated to an extension for Bergmann to respond to the complaint, Bergmann moved to dismiss it. Briefing concluded on September 18, 2013, at which time this Court took the motion under consideration.

### III.  DISCUSSION

## A.     Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8(a)(2).  But the plain statement must "possess enough heft to show that

---

[4]Title VII embodies a deliberate congressional policy of giving state agencies the first opportunity to resolve discrimination complaints. A plaintiff commencing a Title VII action ordinarily must exhaust her administrative remedies by first presenting her claims to the Equal Employment Opportunity Commission or a state administrative agency, as Lehman alleges she did here.

the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or a "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 556 U.S. at 678. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 678; Fed. R. Civ. P. 8(a)(2). Well-pleaded allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

**B.   Title VII**

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). It further makes it unlawful for an employer to

discriminate against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a); Danials-Kirisits v. New York State Office of Court Admin., No. 05-CV-800S, 2013 WL 1755663, at *6 (W.D.N.Y. Apr. 24, 2013).

### 1. Retaliation

"Although a plaintiff need not establish a *prima facie* case of retaliation to survive a motion to dismiss, courts consider the elements of the *prima facie* case in determining whether there is sufficient factual matter in the complaint, accepted as true, to allow for a reasonable inference that the defendant is liable for the misconduct alleged." Ghadersohi v. Roswell Park Inst., No. 10-CV-143S, 2011 WL 4572539, at *3 (W.D.N.Y. Sept. 30, 2011) (citing Iqbal,129 S. Ct. at 1949 & Doverspike v. Int'l Ordinance Techs., 817 F. Supp. 2d 141, 148 (W.D.N.Y. 2010)).

"To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there existed a causal connection between the protected activity and the adverse action." Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007) (citing Feingold v. New York, 366 F.3d 138, 156 (2d Cir. 2004)). To prevail on a claim for retaliation under Title VII, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006) (internal quotation marks omitted).

"[M]aterial adversity," the Court stressed, is distinct from "trivial harms," which are not actionable. Id.

Bergmann attacks Lehman's retaliation claim on two fronts: it asserts that (1) many of the acts identified in the complaint are not sufficiently "adverse" under Title VII; and (2) of the acts that are admittedly adverse – refusing to consider her for the CEO position and the decision to reduce her 2011 bonus – Lehman fails to allege a plausible connection to a protected activity.

In response, Lehman asserts that she suffered five materially adverse actions: her demotion, the reduced bonus, the refusal to promote, her placement on a PIP, and her "constructive discharge." Because Bergmann concedes that her reduced bonus and the CEO issue are sufficiently adverse, the contested actions (regarding material adversity) are limited to her demotion, her discharge, and her placement on the PIP. Those will be addressed first, followed by a discussion of whether any adverse acts are suffciently connected to a protected activity.

### i. Material adversity

#### a. Demotion

Bergmann characterizes the decision to move Lehman to a position entitled "Director of Government Relations," as a lateral transfer and goes on to cite authority for the proposition that lateral transfers are not adverse actions under Title VII. But Lehman deems it a "demotion," and while that characterization or label may not, in itself, be entitled to an assumption of truth, she adds heft to the assertion by calling the new position "less substantive" and "less prestigious" and noting that the move "negatively affected [her] reputation" at Bergmann. (Compl., ¶¶ 50, 53.) As authority cited by Bergmann itself makes

clear, this is sufficient to state a claim that the move was adverse. See Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) ("A materially adverse change might be indicated by . . . *a less distinguished title* . . ."). (Emphasis added.) More is not required at this stage. See, e.g., Twombly, 550 U.S. at 570 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").

**b.     Discharge**

A plaintiff advancing a claim that she was constructively discharged must allege "working conditions so intolerable that a reasonable person would have felt compelled to resign." Pennsylvania State Police v. Suders, 542 U.S. 129, 147, 124 S. Ct. 2342, 2354, 159 L. Ed. 2d 204 (2004). "The Second Circuit has held that a [claim for] constructive discharge cannot be established [or stated] simply through evidence [or allegations] that the 'employee was dissatisfied with the nature of h[er] assignments,' 'the employee feels that the quality of her work has been unfairly criticized,' or 'the employee's working conditions were difficult or unpleasant.'" Alfieri v. SYSCO Food Servs.–Syracuse, 192 F. Supp. 2d 14, 23 (W.D.N.Y. 2001) (quoting Stetson v. NYNEX Serv. Co., 995 F.2d 355, 360 (2d Cir.1993)).

Taking Lehman's allegations as true, Bergmann forced her to take a less prestigious position, awarded her one lower bonus, and occasionally ostracized her from important corporate decisions. Simply put, these facts do not give rise to a reasonable inference that Lehman was compelled to resign. It is not enough that a reasonable person would have "preferred not to continue working for that employer." Spence v. Maryland Cas. Co., 995 F.2d 1147, 1156 (2d Cir.1993). Lehman must allege that her job had become "intolerable"

to the point that she was "forced into an involuntary resignation." Pena, 702 F.2d at 325. This is a high standard, and Lehman must allege facts that give rise to an inference that the high standard could plausibly be met. She has not.

By way of contrast, in Lopez, the employer encouraged the plaintiff to resign and told him that he would be terminated regardless of his performance. Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1186 (2d Cir. 1987). The same is true in both Borrero, where the plaintiff was told "he would be fired no matter what happened," and McCalla, where the plaintiff was told she would be terminated at the conclusion of her probationary period. Borrero v. Am. Express Bank, 533 F.Supp.2d 429, 441 (S.D.N.Y.2008); McCalla v. SUNY Downstate Med. Ctr., No. 03–CV–2633, 2006 WL 1662635, at *5 (E.D.N.Y. June 8, 2006). Likewise, in Chertkova, the employer said the plaintiff "would not be around," and that she would be fired instantly if she did not meet certain ambiguous behavior objectives. Chertkova v. Connecticut Gen. Life Ins. Co., 92 F.3d 81, 89 (2d Cir. 1996). And in Madray, the plaintiff was twice denied a full-time position and was led to believe that there was nothing she could do that would enable her to obtain tenure at the end of her discretionary period and, as a result, felt she would be terminated regardless of the merits of her work. Madray v. Long Island Univ., 789 F. Supp. 2d 403, 410–11 (E.D.N.Y. 2011).

But here there are no explicit or implied threats of termination, and there are no allegations of ineluctable discharge.

Even in cases that lack this element, other, more severe sanctions were imposed. Those cases thus confirm that more is required to state a constructive-discharge claim. In Kirsch, for example, the employer reduced the plaintiff's salary by nearly half and predicted that he would resign. Kirsch v. Fleet St., Ltd., 148 F.3d 149, 161 (2d Cir. 1998). In Morris,

management cut the plaintiff's salary by $25,000. <u>Morris v. New York City Dep't of Sanitation</u>, No. 99 CV 4376 (WK), 2003 WL 1739009, at *1 (S.D.N.Y. Apr. 2, 2003).

Here, although Lehman does allege her pay was reduced, she does not say by how much. And there is no allegation that her salary was tampered with – only that one bonus was the lowest she had received as a supervisor.

This is not to say that to state a constructive-discharge claim, one must allege facts mirroring those of prior cases. And this Court is aware that in analyzing a claim of constructive discharge, "the effect of a number of adverse conditions in the workplace is cumulative." <u>Chertkova</u>, 92 F.3d at 90. But those cases nonetheless provide a useful guidepost, and the various episodes identified in Lehman's complaint, even considered in combination, do not elevate her claim to the necessary level. As the Second Circuit has found, even "hypercritical supervision" and "unfair and unwarranted treatment [are] by no means the same as constructive discharge." <u>Stetson</u>, 995 F.2d at 360. Accordingly, this claim will be dismissed.

     **c. The PIP**

Bergmann contends that the placement of a employee on a PIP, without more, is not an adverse act and that therefore this claim must be dismissed. In support of this argument, it attaches an attorney-affirmation suggesting that the PIP "bore no material consequences" for Lehman. It also cites <u>Kaplan v. Multimedia Entm't, Inc.</u>, which held, on a summary judgment motion, that there was *no evidence* that plaintiff suffered any cognizable harm either in the form of a pecuniary injury or "the sort of non-monetizable, yet still actionable, harm resulting from the loss of prestige or professional opportunity" by being placed on a PIP. No. 03-CV-0805C (F), 2008 WL 686774, at *6 (W.D.N.Y. Mar. 10,

2008) (quoting <u>Charles v. City of New York</u>, No. 99 Civ. 3786(RWS), 2007 WL 2728407, *11 (S.D.N.Y. September 17, 2007)).

But Bergmann has brought a motion to dismiss, not a motion for summary judgment, meaning that Bergmann's affirmation and its citation to <u>Kaplan</u> are both misplaced. This Court must take Lehman's assertions – not those of the opposing attorney – as true. Lehman alleges that the PIP unjustly criticized her; that she was the only upper-level supervisor to be given a PIP; and that the PIP was an act of discipline. This Court finds that these allegations sufficiently raise a plausible inference that, by being placed on PIP, there may have attached "pecuniary injury or the sort of non-monetizable, yet still actionable, harm resulting from the loss of prestige or professional opportunity." <u>See id.</u> As Bergmann concedes, negative performance evaluations or ratings may, in some circumstances, constitute adverse employment actions if they trigger negative consequences to the conditions of employment. Here, Lehman received her lowest bonus – an undisputed "condition of employment" – just a few weeks after being placed on the PIP. Accordingly, Bergmann's motion on this ground is denied.

  **ii.**  **Connection to a protected activity**

    **a.**  **Demotion & the PIP**

Bergmann does not argue that these claims, as pled, are insufficiently connected to a protected activity. Because this Court has already determined they are sufficiently "adverse," they will survive Bergmann's motion to dismiss.

### b.      Promotion denied

As noted, to state a retaliation claim a plaintiff must allege that there exists a causal connection between the protected activity – i.e., a complaint of discrimination – and the adverse action.

The predicate "protected activity" on which Lehman relies to support her claim regarding the refusal to consider her for the CEO position is a complaint she made to her supervisor, Tom Mitchell, in October of 2011. (Lehman cannot rely on the complaint she lodged in November 2011 because the decision to deny her consideration for the CEO position was made on October 27, 2011, before the second complaint was lodged. (Compl., ¶ 43)). In full, Lehman alleges that she "reported to CEO Mitchell on October 14, 2011 that she was the only Manager or Director being reprimanded for problems all of the Managers and Directors were having." (Compl., ¶ 34.) She then goes on in her complaint to note that "all of the other Managers and Directors were male." (Id.)  She does not suggest, however, that she underscored this fact for Marshall.

The deficiency in this complaint – for purposes of Title VII – is immediately apparent: Lehman does not allege, as she must, that she complained to Mitchell that she was being discriminated against *because of her sex*. See Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000) *(*"[T]he term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination")*, superseded on other grounds by statute*. Rather, she apparently asks that this Court assume that Mitchell assumed that she was complaining of sex discmination based on the simple fact that she was the only female manager or director. But "the onus is on the speaker to clarify to the employer that [s]he is complaining of unfair treatment due to h[er] membership in a protected class and that

[s]he is not complaining merely of unfair treatment generally." Aspilaire v. Wyeth Pharms., Inc., 612 F.Supp.2d 289, 308–09 (S.D.N.Y.2009). Indeed, "[t]he plaintiff must complain of discrimination in sufficiently specific terms so that the employer is put on notice that the plaintiff believes he or she is being discriminated against on the basis of race, gender, national origin, or any other characteristic protected by Title VII." Brummell v. Webster Cent. Sch. Dist., No. 06-CV-6437, 2009 WL 232789, at *6 (W.D.N.Y. Jan. 29, 2009). Thus Lehman's general and vague complaint, devoid of any reference to sex-based discrimination, cannot constitute protected activity. See id. (Plaintiff's complaints "do not constitute protected activity" because "[a]t no time did [the plaintiff] allege that she was being treated differently because she was a woman, or that [her supervisor] treated her or other women differently because of their gender"). As such, Lehman's claim regarding the CEO position must be dismissed.

### c.    Bonus reduced

Although Bergman concedes that a reduced bonus would constitute an adverse action, it argues that Lehman's allegations "provide no perspective on the background facts that might allow a court to surmise that the amount of the bonus was retaliatory." (Def.'s Br. at 11.) But Lehman has pled the only "background facts" required of her at this point. She alleges that less than six weeks after she made the November 2011 complaint, her pay was reduced. This temporal proximity gives rise to an inference of discrimination. See, e.g., Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001) (citing Manoharan v. Columbia Univ., 842 F.2d 590, 593 (2d Cir.1988)) ("[T]emporal proximity can demonstrate a causal nexus").  Therefore, this claim also survives Bergmann's motion.

**2.      Hostile work environment**

The phrase "terms, conditions, or privileges of employment" found in Title VII "is broad enough to encompass, and render actionable, an employer's requirement that an employee work in a discriminatorily hostile or abusive environment, so long as the discriminatory conduct at issue is severe or pervasive enough to create an objectively hostile or abusive work environment." Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001) (internal quotation marks omitted).

Here, in addition to claims that Lehman was retaliated against in contravention of Title VII, she also alleges that Bergmann maintained a hostile work environment in violation of that statute.

To state a claim for a hostile work environment:

> a plaintiff must plead facts that would tend to show the complained of conduct: (1) is objectively severe or pervasive – that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex.

Patane, 508 F.3d at 113 (internal quotation marks and punctuation omitted).

"Determining whether workplace harassment was severe or pervasive enough to be actionable depends on the totality of the circumstances," Cruz, 202 F.3d at 570, which include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance, Dawson v. County of Westchester, 373 F.3d 265, 272–73 (2d Cir. 2004).

This Court finds that Lehman has adequately pled a hostile-work-environment claim.[5] Bergmann contends otherwise, arguing that many of the acts Lehman identifies in her complaint are facially neutral, disparate incidents. For instance, Lehman asserts that her pay was reduced, that she was unjustly placed on a PIP, that she was unfairly publicly reprimanded, and that she was unjustly demoted. None of these actions, on their face, are connected to her status as a female. But first, the Second Circuit has found that "a hostile work environment is one form of disparate treatment" and that, cumulatively, disparate acts may ultimately create an "abusive" workplace. Raniola v. Bratton, 243 F.3d 610, 617 (2d Cir. 2001). Second, "[t]here is little question that incidents that are facially sex-neutral may sometimes be used to establish a course of sex-based discrimination." Alfano v. Costello, 294 F.3d 365, 375 (2d Cir. 2002). "Facially neutral incidents may be included," the court continued, "among the 'totality of the circumstances' that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on sex." Id. Here, not only has Lehman alleged that the treatment she received was because of her sex, but she adds heft to that allegation by pleading that her manager, Tom Mitchell, had expressed sex-based animus in the past. Indeed, "[c]ircumstantial evidence that facially sex-neutral incidents were part of a pattern of discrimination on the basis of gender may consist of evidence that 'the same individual' engaged in "multiple acts of harassment, some overtly sexual and some not."" Kaytor v. Electric Boat Corp., 609 F.3d 537, 547–48 (2d Cir.2010) (quoting Alfano, 294 F.3d at 375.)

---

[5]This finding is not incompatible with the finding that Lehman has not stated a constructive-discharge claim. When both claims are premised on the same facts, a constructive-discharge claim requires "something more" and is considered an "aggravated" case of harassment. See Suders, 542 U.S. at 146; see also Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1160 (8th Cir. 1999) ("[A]lthough there may be evidence from which a jury could find sexual harassment, . . . the facts alleged [for constructive discharge must be] . . . so intolerable that a reasonable person would be forced to quit.").

Lehman alleges here that Mitchell referred to Short, a woman, as the "marketing bitch" and that Mitchell told Short she would never advance in the hierarchy of the firm "because she was a woman." (Compl., ¶ 15.) That this happened to someone else is, for these purposes, inconsequential; the allegation tends to show that Mitchell harbored a bias against women in the workplace, and that, in turn, lends plausibility to the assertions that Lehman was subjected to harsh treatment because she is a woman. See Kaytor, 609 F.3d at 548 (fact that some of the conduct and comments were not directed at the plaintiff does not mean that the conduct and comments are irrelevant).

      The Second Circuit has consistently "cautioned against setting the bar [for a hostile-work-environment claim] too high, noting that while a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of his employment altered for the worse." Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003) (citing Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 70 (2d Cir. 2000)). Drawing all reasonable inferences in the Lehman's favor, accepting the well-pled allegations as true, and considering them in their totality, this Court finds that Lehman has adequately alleged that the misconduct was plausibly connected to her status as a women and that it was "severe or pervasive" enough to state a hostile-work-environment claim. See, e.g., Drees v. Cnty. of Suffolk, No. 06-CV-3298(JFB)(ETB), 2009 WL 875530, at *13 (E.D.N.Y. Mar. 30, 2009) (denying motion for summary judgment because evidence of a demotion and over-scrutiny of work product may be sufficient to establish a retaliatory hostile work environment).

**C.      Equal Pay Acts**[6]

The federal Equal Pay Act provides that "[n]o employee . . . shall discriminate . . . between employees on the basis of sex." 29 U.S.C. § 206(d)(1). To state a claim under the Equal Pay Act, plaintiff must allege that: "(1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions." Klein v. New York Univ., No. 07 Civ. 160, 2008 WL 3843514, at *3 (S.D.N.Y. Aug. 14, 2008). Although the plaintiff need not establish a prima facie case at this stage, these elements "provide an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible." Kassman v. KPMG LLP, 925 F. Supp. 2d 453, 461 (S.D.N.Y. 2013).

In undertaking that analysis, "[b]ald allegations that male employees were paid more than female employees . . . will not survive a motion to dismiss . . . ." Suzuki v. State Univ. of New York Coll. at Old Westbury, No. 08-CV-4569 TCP, 2013 WL 2898135, at *4 (E.D.N.Y. June 13, 2013). As the Suzuki court found, "the Second Circuit and district courts [have] expressly held that [] conclusory allegations c[an]not withstand a Rule 12(b)(6) motion to dismiss an EPA claim" and that "district courts have also dismissed EPA claims where a plaintiff failed to allege how his or her position and the comparison position were substantially similar." Id.

---

[6]New York's Equal Pay Act is analyzed under the same standards applicable to the federal Equal Pay Act. Pfeiffer v. Lewis Cnty., 308 F. Supp. 2d 88, 98 (N.D.N.Y. 2004) (citing Kent v. The Papert Companies, Inc., 309 A.D.2d 234, 246, 764 N.Y.S.2d 675 (1st Dept. 2003) & Mize v. State Div. of Human Rights, 33 N.Y.2d 53, 56, 349 N.Y.S.2d 364, 304 N.E.2d 231 (1973)).

Lehman's claim suffers from both these infirmities. She alleges no facts relative to the conclusion that men were paid more than women. And she provides no substance to the assertion that "upon information and belief . . . [her] male counterparts . . . had comparable performance and responsibilities." (Compl., ¶ 65.) How was her position comparable or substantially similar? What responsibilities did they share? Without these facts, courts routinely dismiss EPA claims pled in this formulaic fashion. See e.g., Arafat v. School Bd. of Broward Cnty., No. 13–10726, 2013 WL 6244735, at *3 (11th Cir. Dec. 4, 2013) (unpublished) (affirming district court's dismissal of EPA claim because the plaintiff "did not plead the facts comparing her skill, effort, and responsibility levels to those younger males who were allegedly paid more than her"); Unger v. City of Mentor, 387 F. App'x 589, 595 (6th Cir. 2010) (unpublished) ("[C]omplaint [asserting EPA claim] cites nothing more than the claim's legal elements, neglecting to provide any factual basis in support.").

Accordingly, Lehman's EPA claims are dismissed, but without prejudice and with leave to re-plead if she can do so in compliance with Rule 8. See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.")

## IV. CONCLUSION

Lehman's retaliation claims predicated on Bergmann's alleged decision to demote her, place her on a performance improvement plan, and reduce her bonus survive Bergmann's motion to dismiss. Those claims premised on the "constructive discharge" and the denial of a promotion are, however, dismissed with prejudice.

      Lehman's hostile-work-environment claim also survives the motion to dismiss. Her Equal Pay Act claims, however, fail to meet Rule 8's standard, and are therefore dismissed without prejudice.

## V. ORDERS

      IT HEREBY IS ORDERED, that Defendant's motion to dismiss (Docket No. 6) is GRANTED in part and DENIED in part.

      FURTHER, Plaintiff is granted leave to file an amended complaint. Leave, however, is limited to factual allegations regarding Plaintiff's Equal Pay Act claims. If filed, the complaint is due April 14, 2014.

Dated:    March 31, 2014
            Buffalo, New York

                                                    /s/William M. Skretny
                                                WILLIAM M. SKRETNY
                                                      Chief Judge
                                          United States District Court